# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2024

Lyle W. Cayce
Clerk

_____

No. 23-40478

_____

Christine Reule; Harriet Nicholson; Rebecca
Alexander Foster; Jimmy Lee Menifee; Tony Lamar
Vann; Honorable Madeleine Connor,

*Plaintiffs—Appellants*,

*versus*

Honorable Reeve Jackson; Penny Clarkston; Megan
LaVoie,

*Defendants—Appellees.*

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:22-CV-367

_____

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Irma Carrillo Ramirez, *Circuit Judge*:

Appellants are a group of individuals who have been declared vexatious litigants under a Texas statute. Their challenge to the constitutionality of that statute, which they asserted in a lawsuit against a state court judge, a state court clerk, and a state official responsible for publishing the online list of individuals declared vexatious litigants, was dismissed for lack of jurisdiction. We AFFIRM.

No. 23-40478

# I

## A

Chapter 11 of the Texas Civil Practice & Remedies Code ("Chapter 11") sets out a process by which Texas courts can restrict vexatious *pro se* litigants' access to state courts upon a motion by the opposing party. Tex. Civ. Prac. & Rem. Code § 11.051. Section 11.054 sets out the criteria for declaring a plaintiff a vexatious litigant. *Id*. § 11.054. Once a litigant has been declared vexatious, the court may enter a prefiling order precluding that litigant from filing future suits *pro se* without first obtaining permission from a local administrative judge ("LAJ"). *Id*. § 11.101(a). "A person who disobeys [this prefiling order] is subject to contempt of court." *Id*. § 11.101(b). A prefiling order is appealable, and that appeal may be taken without permission from an LAJ. *Id*. §§ 11.101(c), 11.103(d). Section 11.102 sets out the process by which a vexatious litigant may obtain permission from the LAJ to file a new suit, including the standard the LAJ must apply. *Id*. § 11.102.

State court clerks must reject any filing submitted by a vexatious litigant unless that litigant has first obtained permission from an LAJ. *Id*. § 11.103(a). If a clerk mistakenly dockets a filing from a vexatious litigant, any party may file a notice pointing out the mistake; the clerk must then notify the court, and "[o]n receiving notice from the clerk, the court shall immediately stay the litigation and shall dismiss the litigation" unless the litigant obtains retroactive permission from the LAJ. *Id*. § 11.1035. Finally, clerks must notify the Office of Court Administration of the Texas Judicial System ("OCA") when a court enters a prefiling order. *Id*. § 11.104(a). OCA is required to maintain a list of litigants who are subject to a prefiling order and post that list on its website. *Id*. § 11.104(b). And OCA is prohibited from

removing an individual's name from the list without a court order. *Id*. § 11.104(c).

## B

Appellants are a group of individuals who have been declared vexatious litigants and are subject to a prefiling order. As such, they must seek permission from the local LAJ to file lawsuits *pro se*.

Lead Appellant Christine Reule, a resident of Smith County, was declared a vexatious litigant and has been subject to a prefiling order since 2019. Appellants allege that Reule needs to file a new lawsuit *pro se* because her neighbor—who purportedly knew that Reule was on the vexatious litigants list and therefore could not sue him—shot and killed her dog. They claim Chapter 11 has "severely and permanently impaired" Reule's right to petition and access courts. Their complaint contains similar allegations pertaining to each of the Appellants. Other than Reule, however, none of the Appellants alleges that he or she has an immediate need to file a lawsuit that is inhibited by operation of Chapter 11.

Appellants filed this suit challenging the constitutionality of Chapter 11—specifically, sections 11.001(2), 11.052, 11.053, 11.054, 11.055, 11.056, 11.101, 11.102, 11.103, and 11.104—both on its face and as applied to them. They averred that Chapter 11 permanently deprives them of their First Amendment right to petition, and therefore operates as an unlawful prior restraint; it is overbroad, vague, and arbitrary and capricious and cannot satisfy any level of judicial scrutiny; it flouts due process and equal protection; it operates independently of applicable rules of evidence; it abridges a plaintiff's right to appeal a decision; and it runs counter to federal judicial principles regarding vexatious litigants. They sought a declaration that Chapter 11 is unconstitutional; certification of two defendant classes consisting of all Texas state court clerks and all LAJs; an injunction

prohibiting one of the Appellees and all members of the two defendant classes from enforcing Chapter 11; nominal damages; and costs and attorney's fees.

Appellants sue Judge Austin Reeve Jackson,[1] Penny Clarkston, and Megan LaVoie. Appellants sue Judge Jackson, the LAJ for Smith County,[2] in his official capacity and as representative of a putative class of defendants defined as all "Texas LAJs or others with similar duties." Appellants clarify that Judge Jackson "is not sued in his *judicial* capacity," but instead "in his official and administrative capacities in the performance of the ministerial task of deciding whether to permit a 'vexatious litigant's' *pro se* filing." They allege that Judge Jackson "enforces Chapter 11 by granting or denying permission for a 'vexatious litigant' to file a *pro se* suit or appeal."

Appellants sue Clarkston, the District Clerk for Smith County, in her official capacity and as representative of a putative class of defendants defined as all court clerks in Texas. They allege that Clarkston enforces Chapter 11 because "she accepts civil cases for filing and issues citations for service of process" and "[h]er role in enforcing and executing Chapter 11 is set forth in the statute." Appellants maintain that "[i]f Defendant Clarkston did not perform this duty, the statute would be of no effect."

Finally, Appellants sue LaVoie, the Administrative Director for OCA, in her official capacity. They claim that she "enforces and executes Chapter 11 by creating, updating, and disseminating the list of 'vexatious litigants.'"

---

[1] Appellants originally named as a defendant Judge Jack Skeen, Jr. Judge Jackson has since replaced Judge Skeen as the LAJ for Smith County. For clarity, we refer to them collectively as "Judge Jackson."

[2] Each county has one LAJ. Tex. Gov't Code § 74.091(a). In a county with only one statutory county court, the judge of that court serves as the LAJ, *id*. § 74.091(c); in a county with multiple statutory county courts, the judges of those courts elect the LAJ from their ranks to serve for a two-year term, *id*. § 74.091(b).

No. 23-40478

According to Appellants, "if [LaVoie] did not create and update the list, and make the list available to the public on OCA's website, including to clerks, judges, and potential defendants, Chapter 11 would be of no effect."

Appellees moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argued, in relevant part, that the suit should be dismissed because no justiciable case or controversy existed and Appellants lacked standing. Following a hearing, the district court dismissed under Rule 12(b)(1). Although it "assume[d] that [Appellants] alleged an injury[,]" and Appellees "d[id] not dispute that [Appellants] have identified a cognizable injury for Article III purposes[,]" the court concluded that Appellants did not have standing to bring this suit because they did not satisfy the two remaining elements of Article III standing. Additionally, the court held that it lacked subject matter jurisdiction over the claims against Judge Jackson because they did not give rise to a case or controversy within the meaning of Article III. Accordingly, the court dismissed all claims without prejudice and denied as moot Appellants' motion for class certification.

Appellants moved to alter the judgment. The court denied that motion. This appeal followed.

## II

We review a district court's grant of a 12(b)(1) motion to dismiss *de novo*, "applying the same standard used by the district court." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hebert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995)). Appellants bear the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). The issue of subject matter jurisdiction cannot be waived, and federal courts "are duty-bound to examine the basis of subject matter jurisdiction" at all

stages in the proceedings and dismiss if jurisdiction is lacking. *See Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021); *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021).

## III

Appellants challenge the district court's conclusion that there is no case or controversy between them and Judge Jackson.

Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies[.]'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). In *Whole Woman's Health v. Jackson*, the Supreme Court noted that state court judges "exist to resolve controversies about a law's meaning or its conformance to the Federal and State constitutions, not to wage battle as contestants in the parties' litigation." 595 U.S. 30, 40 (2021). Accordingly, because judges are not sufficiently adverse to parties like Appellants, "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" *Id.* (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)).

We have identified an important principle that clarifies this rule: "[t]he requirement of a justiciable controversy is not satisfied where a judge acts in his *adjudicatory* capacity." *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003) (emphasis added) (citing *Mendez v. Heller*, 530 F.2d 457, 458 (2d Cir. 1976)). In contrast, if a judge acts as the enforcer or administrator of a challenged statute, a case or controversy may exist. *See Lindke v. Tomlinson*, 31 F.4th 487, 493 (6th Cir. 2022) ("If [the state judge] acted as an enforcer or administrator of the statute, he may be a proper defendant[.]"); *see also Bauer*, 341 F.3d at 359–60 (distinguishing a Supreme Court case holding that a § 1983 action against a state judge was proper because the judge "acted in an enforcement, rather than an adjudicatory capacity").

No. 23-40478

Accordingly, to determine whether a case or controversy exists, courts look to the role the judge plays in the relevant statutory scheme. *See Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018) (per curiam) (citing *Bauer*, 341 F.3d at 359). If the role is strictly adjudicatory, then no case or controversy exists. *Id*. Relevant considerations include whether the judge initiated the proceedings that the plaintiff is challenging or was "a cause of the statute being enacted" and whether the challenged statutory scheme compels or allows for traditional judicial safeguards such as notice and a hearing. *See id.*; *Bauer*, 341 F.3d at 360, 361. Judges are not proper parties to a suit challenging a state law if, in resolving disputes under the challenged statute, they "act as they would in any other case" in that "they sit as adjudicators, finding facts and determining law in a neutral and impartial judicial fashion." *In re Justices of Sup. Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982).

Here, Judge Jackson was acting in his adjudicatory capacity, rather than as enforcer or administrator of Chapter 11. The only duty that Judge Jackson and other LAJs are compelled to discharge under Chapter 11 is to evaluate vexatious litigants' requests for permission to file a new lawsuit. *See* Tex. Civ. Prac. & Rem. Code § 11.102. The statute instructs them to rule on the motions by "mak[ing] a determination on the request with or without a hearing[,]" and if a hearing is necessary, "the judge may require that the vexatious litigant . . . provide notice of the hearing to all defendants named in the proposed litigation." *Id*. § 11.102(c). The statute sets out criteria for determining whether permission should be granted, too. *Id*. § 11.102(d). And although the LAJ's decision cannot be directly appealed, "the litigant may apply for a writ of mandamus" to obtain review of the LAJ's ruling. *Id*. § 11.102(f). In these respects, the functions compelled by Chapter 11 are "function[s] normally performed by a judge." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

No. 23-40478

Appellants emphasize, however, that they intended to sue Judge Jackson in his administrative capacity, challenging only "the performance of the ministerial task of deciding whether to permit a 'vexatious litigant's' *pro se* filing." But there is nothing ministerial or administrative about that duty: it is precisely the type of adjudicatory function judges perform every day, and Appellants cannot escape the rule articulated in *Whole Woman's Health* by labeling an adjudicatory process as an administrative one.

There is no Article III case or controversy between Appellants and Judge Jackson.[3] We therefore affirm the dismissal of the claims against him.

## IV

Appellants argue that the district court erred in ruling that they lacked standing to sue Appellees.

As noted, federal courts have the authority to resolve only live cases or controversies under Article III of the Constitution. *Lujan*, 504 U.S. at 559. One of the "landmarks" identifying those cases and controversies which are susceptible to judicial determination is standing. *Id*. at 560. "[T]he irreducible constitutional minimum of standing contains three elements." *Id*. They are:

> (1) that the plaintiff [has] suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and

---

[3] Appellants contend that this principle does not apply where a plaintiff seeks prospective, rather than retrospective, relief. This argument appears to be based on a conflation of the lack of an Article III case or controversy on the one hand and the availability of judicial immunity, which we do not address, on the other.

not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citing *Lujan*, 504 U.S. at 560–61).

The party invoking federal jurisdiction bears the burden of proving that standing exists. *Lujan*, 504 U.S. at 561 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "[S]tanding is not dispensed in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Instead, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

Here, the district court assumed, for purposes of resolving the motion to dismiss, that Appellants had satisfied the first element of standing, factual injury. It found that Appellants had not satisfied the second and third elements: traceability and redressability. Because we affirm the district court's conclusion as to traceability and redressability, we do not address whether Appellants have demonstrated factual injury.

## A

To satisfy the traceability element of standing, a plaintiff must establish that there is "a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[.]" *Bennett*, 520 U.S. at 167. Standing exists where the purported injury is connected to allegedly unlawful government conduct. *See Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 (5th Cir. 2014) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)). The defendant's conduct does not need to be "the very last step in the chain of causation."

No. 23-40478

*Bennett*, 520 U.S. at 169. And proximate cause need not be shown. *Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*, 946 F.3d 649, 655 (5th Cir. 2019).

"[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party . . ., 'standing is not precluded, but it is ordinarily substantially more difficult to establish[.]'" *California v. Texas*, 593 U.S. 659, 675 (2021) (internal citations omitted). Indeed, it is well established that standing cannot exist where the injury "depends on the unfettered choices made by independent actors not before the court and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict[.]" *Lujan*, 504 U.S. at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.)). Nevertheless, the causation element can be satisfied where "the defendant's actions produce a 'determinative or coercive effect upon the action of someone else,' resulting in injury." *Inclusive Cmtys.*, 946 F.3d at 655 (quoting *Bennett*, 520 U.S. at 169).

Here, Appellants do not satisfy this causation element for several reasons. First, if Appellees all ceased discharging their duties under Chapter 11, nothing about Appellants' situation would change. Even if all LAJs across the state refused to evaluate and adjudicate vexatious litigants' requests for permission to file new suits, all clerks of court across the state simply ignored their duties under Chapter 11 and docketed those suits, and LaVoie on behalf of OCA took down the webpage publishing the list of vexatious litigants, Appellants would still not get the unfettered access to state courts they seek. Under Chapter 11, they could still face contempt if they filed a new suit, and their suits could still be dismissed. Accordingly, Appellants' injury is not fairly traceable to Appellees' conduct.[4] Chapter 11 does have an "immediate

---

[4] This conclusion could also be framed as an issue of redressability, which is discussed below. "The second and third standing requirements—causation and

No. 23-40478

coercive effect" on Appellants, but Appellants confuse that effect "with any coercive effect that might be applied by the *defendants*[.]" *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (emphasis in original). That confusion is fatal to their causation arguments.

Additionally, the individuals who arguably are responsible for causing Appellants' complained-of injury are the judges who entered the prefiling orders against Appellants. The state court judges who declared Appellants vexatious did so based on the discretion afforded them under Chapter 11. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 11.054 ("A court *may* find a plaintiff a vexatious litigant if the defendant shows" that the plaintiff satisfies the two criteria set out in the statute. (emphasis added)). To the extent Appellants were injured, therefore, they were injured by the "unfettered choices made by independent actors not before the court" based on those actors' "broad and legitimate discretion[.]" *Lujan*, 504 U.S. at 562.

Appellants apparently contend that these deficiencies are rectified by the fact that they seek a declaratory judgment that Chapter 11 is unconstitutional. They suggest that, because prevailing in this litigation will lead to such a declaration, no one will be able to enforce Chapter 11, and therefore any injury caused by its operation will be remedied. But the type of remedy sought cannot relieve Appellants of their obligation to establish that they have standing to seek any remedy at all. *See Skelly Oil Co. v. Phillips*

---

redressability—are often 'flip sides of the same coin.' . . . If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380–81 (2024) (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)); *see also* 33 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 8342 (2d ed. 2024) ("The causation and redressability prongs of constitutional standing often boil down to the same thing—i.e., where a certain action is causing a claimed injury, vacating that action will provide redress for that injury.").

*Petroleum Co.*, 339 U.S. 667, 671, 674 (1950) (holding that while the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts" it did not alter the Article III jurisdiction of those courts). Appellants' injuries are not fairly traceable to Appellees' conduct.

## B

Appellants also failed to satisfy the third element of standing: redressability. "To satisfy redressability, a plaintiff must show that 'it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision.'" *Inclusive Cmtys.*, 946 F.3d at 655 (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). The specific form of relief sought must at least lessen the injury of which plaintiff complains, but it need not completely resolve it. *Id.* (citing *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014)); *see also Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 452 (5th Cir. 2022) (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021)) (holding plaintiff lacked standing to sue because her complained-of injury was not redressable by the award of compensatory and punitive damages she sought).

Appellants' position regarding redressability is unavailing. The redress they seek—injunctions against Appellees' enforcement of Chapter 11—would not remedy their purported injury because they would still have limited access to state courts. In fact, if LAJs like Judge Jackson were enjoined from discharging their duties under Chapter 11, Appellants would have no hope of ever getting into court again, because every action they filed would be dismissed for failure to obtain the permission their prefiling orders require. And because Appellees' conduct did not cause Appellants' injury, altering or prohibiting that conduct will do nothing to redress it. Accordingly, Appellants do not have standing to bring their claims against Appellees

No. 23-40478

because the relief they seek against Appellees will not redress Appellants' injuries.

## C

Finally, citing the Ninth Circuit's decision in *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004), Appellants contend that "[a]ffirming lack of standing would create a conflict between this Court and the Ninth Circuit[,]" which held that a similarly situated plaintiff had standing to sue similarly situated defendants. *Wolfe* did not analyze the issue of standing. The court only discussed standing as part of its *Rooker-Feldman* analysis, because the plaintiff's myriad references to his previous state lawsuits were not made in an attempt to appeal or otherwise challenge those lawsuits, but instead to establish that he had sued in the past and was therefore likely to do so again in the future. *See id*. at 363–64. No express holding in *Wolfe* runs counter to a conclusion that Appellants lack standing to sue these Appellees. More importantly, *Wolfe* has been overturned. *See Munoz v. Super. Ct. of LA Cnty.*, 91 F.4th 977, 980–81 (9th Cir. 2024) ("To the extent *Wolfe* can be read to hold that the *Ex parte Young* exception allows injunctions against judges acting in their judicial capacity, that conclusion is 'clearly irreconcilable' with [*Whole Woman's Health*] and thus overruled.").

In conclusion, Appellants have not established standing to bring their claims against Appellees.

\*    \*    \*

We AFFIRM the district court's judgment. All outstanding motions are DENIED AS MOOT.